UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PINNACLE HEALTH HOSPITALS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-0186 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 18, 19 |
| | : | | |
| KATHLEEN SEBELIUS, | : | | |
| Secretary of Health and Human Services, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff is a non-profit hospital system created in 1995 by the consolidation of two independent hospitals. Through this action, brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553 *et seq.*, the plaintiff challenges a decision by the Administrator of the Centers for Medicare and Medicaid Services ("the Administrator") disallowing the plaintiff's claim for the recovery of "losses" on depreciable assets that allegedly resulted from the consolidation that created the plaintiff. The Administrator denied the claim on two independent grounds: first, because the consolidation did not effect a bona fide sale of the depreciable assets, and second, because the consolidation was a transaction between related parties. The court concludes that the Administrator's imposition of a bona fide sale requirement was not arbitrary or capricious and that substantial evidence supported the Administrator's conclusion that the

consolidation did not result in a bona fide sale. Accordingly, the court grants the defendant's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment.

## II. BACKGROUND

### A. The Statutory and Regulatory Framework

Medicare provides health insurance to the elderly and disabled by entitling eligible beneficiaries to have payment made on their behalf for the care and services rendered by hospitals, termed "providers." *See* 42 U.S.C. §§ 1395 *et seq.* Providers, in turn, are reimbursed by insurance companies, known as "fiscal intermediaries," that have contracted with the Centers for Medicare and Medicaid Services ("CMS") to aid in administering the Medicare program. *See id.* § 1395h. Fiscal intermediaries determine the amount of reimbursement due to providers under the Medicare Act and applicable regulations. *See id.*

Providers obtain Medicare reimbursement by submitting an annual cost report to their fiscal intermediary demonstrating their costs from the previous year and the portion of those costs allocable to Medicare. 42 C.F.R. § 413.20. After receiving a provider's cost report, the fiscal intermediary is authorized to audit the report before determining the total amount of reimbursement to which the hospital is entitled. *Id.* § 405.1803. If the provider disagrees with the intermediary's determination, it may appeal that determination to the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). The PRRB's determination may, in turn, be appealed to the Administrator. *Id.* § 1395oo(f)(1). The Administrator's ruling constitutes a final agency decision subject to review in a federal district court. *Id.*

At the time of the consolidation at issue in this case, CMS regulations authorized fiscal intermediaries to reimburse Medicare providers based on the costs they incurred in providing

services to beneficiaries. *Id.* § 1395f(b). Included among these reimbursable costs was "depreciation on buildings and equipment used in the provision of patient care." 42 C.F.R. § 413.134(a) (1995).[1] Depreciation was reimbursed annually and calculated by taking the cost of acquiring the asset and dividing that amount first by the asset's estimated useful life and second by the portion of its use attributable to Medicare beneficiaries. *Id.* § 413.134(a)-(b). The initial cost of the asset minus any depreciation was referred to as the "net book value" of the asset, and represented an estimate of its current value. *Id.* § 413.134(b)(iii)(9).

Medicare regulations recognized, however, that an asset's "net book value" represented only an estimate of that asset's current value and that if the provider sold the asset before it reached the end of its useful life, the sale price would provide a more accurate indication of the asset's current value. *See id.* § 413.134(f). Accordingly, the regulations provided that if a provider disposed of an asset in a bona fide sale before the end of its useful life, an adjustment would be made in the amount of depreciation for which the provider had been reimbursed. *Id.* § 413.134(f)(2). Specifically, the regulations provided that if the sale price of the asset was higher than the asset's "net book value," this would establish that Medicare had excessively reimbursed the provider for depreciation, and the provider would be required to repay the difference to Medicare. *Id.* Conversely, if the sale price of the asset was lower than the asset's "net book value," this would indicate that Medicare had insufficiently reimbursed the provider

---

[1] The Medicare regulations discussed in the remainder of this decision have undergone substantial revision since 1995, when the consolidation at issue here took place. *Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1262 n.2 (10th Cir. 2007). Thus, all citations to these regulations in the remainder of this decision refer to the 1995 version of the Code of Federal Regulations, unless otherwise indicated.

3

for depreciable losses, and Medicare would provide an adjustment payment to make up the difference.[2] *Id.*

## B. Factual & Procedural Background

In 1995, Harrisburg Hospital/Seidle Memorial Hospital[3] ("Harrisburg/Seidle") and Polyclinic Medical Center ("Polyclinic") (collectively with Harrisburg/Seidle, "the consolidating hospitals"), two non-profit hospitals in Harrisburg, Pennsylvania, consolidated to form the plaintiff, a new non-profit hospital system. A.R.P.[4] at 2156. Prior to the consolidation, Harrisburg/Seidle and Polyclinic were independent entities and were not subject to common ownership or control. *Id.* at 2157. As a result of the consolidation, the plaintiff acquired title to all of the consolidating hospitals' assets and assumed responsibility for all of their liabilities. *Id.* at 2156. Each consolidating hospital appointed half of the plaintiff's initial governing board. A.R.H. at 895.

Both Harrisburg/Seidle and Polyclinic included a claim for depreciation losses incurred as a result of the consolidation on their 1995 cost reports filed with the Medicare fiscal intermediary. A.R.P. at 2158-59. After the fiscal intermediary denied these claims for depreciation losses, both consolidating hospitals appealed to the PRRB. *Id.* The PRRB

---

[2] Medicare has since revised its reimbursement scheme, such that reimbursement now turns on patient diagnoses rather than actual costs incurred. *See* Social Security Amendments of 1983, Pub. L. No. 98-21, 97 Stat. 65; Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330. As a result, between 1990 and 2000, depreciation gradually ceased to be directly reimbursable. *See generally* 42 C.F.R. §§ 412.324 *et seq.* (2010).

[3] Harrisburg Hospital and Seidle Memorial Hospital shared a single hospital license, medical staff and Medicare provider number and were controlled by the same non-profit parent corporation. A.R.P. at 2155.

[4] This case represents a consolidated review of two administrative proceedings: the first involving Harrisburg/Seidle and the second involving Polyclinic. Accordingly, there are two administrative records before the court. Citations to the administrative record in the Harrisburg/Seidle proceeding will be noted as "A.R.H." Citations to the administrative record in the Polyclinic proceeding will be noted as "A.R.P."

4

determined that the payments were proper and ordered the fiscal intermediary to pay the claims. *See* A.R.P. at 92-113; A.R.H. at 94-115.

The Administrator reversed the PRRB's rulings. *See* A.R.P. at 2-36; A.R.H. at 2-38. More specifically, the Administrator concluded that the claims were not proper for two independent reasons. First, the Administrator ruled that because many of the consolidating hospitals' board members continued to control the plaintiff upon consolidation, the consolidation constituted a transaction between related entities for which Medicare regulations do not require adjustment payments. A.R.P. at 26-33; A.R.H at 26-35. Second, the Administrator ruled that the consolidation did not effect a bona fide sale of the hospitals' assets as required by the Medicare regulations. A.R.P. at 33-35; A.R.H. at 35-36.

The plaintiff filed separate suits on behalf of each consolidating hospital to challenge the Administrator's determinations. *See generally* Compl., *Pinnacle Health Hosps. v. Sebelius*, Civil Action No. 09-00186 (D.D.C. Jan. 30, 2009); Compl., *Pinnacle Health Hosps. v. Sebelius*, Civil Action No. 09-00187 (D.D.C. Jan. 30, 2009). The court subsequently consolidated the separate suits into the present action. Minute Order (July 30, 2009). In September 2009, the plaintiff filed the motion for summary judgment presently before the court. *See generally* Pl.'s Mot. The plaintiff challenges the Administrator's determinations that the claims were properly denied, arguing both that the transaction was between unrelated parties and that there is no requirement that a consolidation effect a bona fide sale of assets for a depreciation adjustment to be paid.[5] *See id.* at 20, 32. In October 2009, the defendant filed her cross-motion for summary judgment.

---

[5] The court need not reach the related parties issue because, as discussed below, the bona fide sale issue was a sufficient independent ground for the Administrator's decision and is, as a result, dispositive of the case. *See Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 376 (3d Cir. 2009) (declining to reach the related parties issue because the bona fide sale issue was a "sufficient independent basis" to sustain the Administrator's action).

5

*See generally* Def.'s Mot. With these cross-motions now fully briefed, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)). To prevail on a motion for summary judgment, the moving party must show that the opposing party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the opposing party, a moving party may succeed on summary judgment. *Id.*

The opposing party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v.*

*Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).

### B. Legal Standard for Review of CMS Administrator Decisions

Pursuant to the Medicare statute, the court reviews decisions of the Administrator in accordance with standard of review set forth in the APA. 42 U.S.C. § 1395oo(f)(1); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen*, 829 F.2d 111, 116 (D.C. Cir. 1987). The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence in a case . . . otherwise reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(A), (E). The "arbitrary and capricious" standard and the "substantial evidence" standard "require equivalent levels of scrutiny."[6] *Adair County*, 829 F.2d at 117. Under both standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Veh. Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983); *Gen. Teamsters Local Union No. 174 v. Nat'l Labor Relations Bd.*, 723 F.2d 966, 971 (D.C. Cir. 1983). As long as an agency has "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," courts will not disturb the agency's action. *Md. Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998). The burden of showing that the agency action violates the APA standards falls on the provider.

---

[6] This Circuit has explained that the substantial evidence standard is a subset of the arbitrary and capricious standard. *Sithe/Indep. Power Partners v. Fed. Energy Regulatory Comm'n*, 285 F.3d 1, 5 n.2 (D.C. Cir. 2002). "While the substantial evidence test concerns support in the record for the agency action under review, the arbitrary and capricious standard is a broader test subsuming the substantial evidence test but also encompassing adherence to agency precedent." *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen*, 829 F.2d 111, 117 (D.C. Cir. 1987).

*Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1018 (D.C. Cir. 1979); *St. Joseph's Hosp. (Marshfield, Wis.) v. Bowen*, 1988 WL 235541, at *3 (D.D.C. Apr. 15, 1988).

In reviewing an agency's interpretation of its regulations, the court must afford the agency substantial deference, giving the agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation."[7] *Thomas Jefferson Univ.*, 512 U.S. at 512 (internal quotations omitted); *Presbyterian Med. Ctr. of Univ. of Pa. Health Sys. v. Shalala*, 170 F.3d 1146, 1150 (D.C. Cir. 1999); *see also Qwest Corp. v. Fed. Commc'ns Comm'n*, 252 F.3d 462, 467 (D.C. Cir. 2001) (stating that the court would reverse an agency's reading of its regulations only in cases of a clear misinterpretation). "So long as an agency's interpretation of ambiguous regulatory language is reasonable, it should be given effect." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 52 (D.C. Cir. 1999). Where the regulations involve a complex, highly technical regulatory program such as Medicare, broad deference is "all the more warranted." *Thomas Jefferson*, 512 U.S. at 512 (internal quotations omitted); *Presbyterian Med. Ctr.*, 170 F.3d at 1151. As for interpretive guides, they are without the force of law but nonetheless are entitled to some weight. *Furlong v. Halala*, 156 F.3d 384, 393 (2d Cir. 1998).

### C. The Court Grants the Defendant's Motion for Summary Judgment and Denies the Plaintiff's Cross Motion for Summary Judgment

#### 1. The Administrator's Imposition of a Bona Fide Sale Requirement Represented a Reasonable Interpretation of the Medicare Regulations

In its motion, the plaintiff argues, *inter alia*, that the Administrator erred in ruling that the regulations required that the consolidation amount to a bona fide sale of the consolidating hospitals' assets. Pl.'s Mot. at 32. In response, the defendant maintains that the Administrator's imposition of a bona fide sale requirement was proper under the applicable regulations, Def.'s

---

[7] "[A court's] review in such cases is 'more deferential . . . than that afforded under *Chevron*.'" *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 52 (D.C. Cir. 1999) (quoting *Nat'l Med. Enters. Inc. v. Shalala*, 43 F.3d 691, 697 (D.C. Cir. 1995)).

Mot. at 14, and that substantial evidence supported the Administrator's conclusion that the consolidation was not a bona fide sale, *id.* at 19.

42 C.F.R. § 413.134(l)(3) governs the effect of consolidations between providers on Medicare reimbursement. Unlike § 413.134(l)(2), which governs mergers between providers, § 413.134(l)(3) does not explicitly authorize depreciation adjustment payments when providers consolidate. *Compare id.* § 413.134(l)(2) (specifying that "[i]f the merged corporation was a provider before the merger, then it is subject to the provisions of paragraphs . . . (f) of this section concerning . . . the realization of gains and losses" on depreciation) *with id.* § 413.134(l)(3) (governing the effect of a consolidation and omitting the previously quoted sentence or other comparable provision); *see also Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1275 (10th Cir. 2007) (noting the discrepancy between the two provisions and concluding that the absence of any reference to depreciation adjustment payments in § 413.134(l)(3) would support an interpretation "precluding *any* adjustment to depreciation payments for providers that consolidate").

Neither party asserts that the omission of an explicit provision for depreciation adjustment payments in § 413.134(l)(3) means that such payments are never permitted in the consolidation context. *See generally* Pl.'s Mot.; Def.'s Mot. The parties do, however, dispute the significance of this omission. The defendant asserts that the applicable regulation permits depreciation adjustment payments to consolidating providers only to the extent that they are permitted by § 413.134(f), *see* Def.'s Mot. at 14, which is "the *only* section expressly permitting depreciation adjustments," *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1274. Accordingly, under the defendant's interpretation, consolidating providers can recover depreciation adjustments only

if the consolidation amounts to a bona fide sale.[8] *See* Def.'s Mot. at 14. Conversely, the plaintiff argues that the regulations require depreciation adjustment payments whenever unrelated providers consolidate. *See* Pl.'s Mot. at 17.

As noted, the defendant's interpretation is entitled to substantial deference and may not be displaced unless it is "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ.*, 512 U.S. at 512 (internal quotations omitted). The defendant's interpretation of § 413.134(l)(3) to permit depreciation adjustment payments only if there has been a bona fide sale is consistent with the text of the regulations and has been repeatedly upheld by the courts. *See Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1274 (concluding that "the 'bona fide sale' requirement is a reasonable construction" of the Medicare regulations governing consolidating providers); *accord Provena Hosps. v. Sebelius*, 662 F. Supp. 2d 140, 152 (D.D.C. 2009) (applying *Via Christi* and affirming the Secretary's imposition of a bona fide sale requirement for consolidating providers); *see also Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 376 (3d Cir. 2008) (concluding that the bona fide sale requirement is a "reasonable interpretation" of the regulations for merging providers); *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 562 (9th Cir. 2008) (concluding that the bona fide sale requirement "is a reasonable construction of the Medicare regulations" for merging providers); *St. Luke's Hosp. v. Sebelius*, 662 F. Supp. 2d 99, 102 (D.D.C. 2009) (concluding, in the merger context, that "the Secretary's interpretation [imposing a bona fide sale requirement] is supported by the text of the regulations and by common sense").

---

8     42 C.F.R. § 413.134(f) lists a number of situations in which depreciation adjustments are recoverable, but the only one which is arguably applicable here is a bona fide sale under § 413.134(f)(2). *See Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1274 (10th Cir. 2007) (concluding that only the bona fide sale provision could apply in a consolidation case).

The plaintiff argues that the imposition of a bona fide sale requirement on consolidating providers was not consistent with the interpretation in effect at the time of the transaction and thus represents an abrupt and impermissible reversal of position by the defendant.[9] *See* Pl.'s Mot. at 33. Yet the interpretive materials cited by the plaintiff in support of this argument do not carry the force of law. *Furlong*, 156 F.3d at 393. Moreover, courts have repeatedly rejected the plaintiff's argument that the imposition of a bona fide sale requirement on consolidating providers reflects a reversal of position. *See Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1275 (rejecting the plaintiff's argument regarding an impermissible reversal of position by CMS and concluding that the letters from CMS officials cited by the plaintiff were consistent with the imposition of a bona fide sale requirement because they explicitly referenced § 413.134(f)); *see also Robert F. Kennedy Med. Ctr.*, 526 F.3d at 563 (concluding that evidence of a regulatory reversal on the bona fide sale requirement was unconvincing); *Provena Hosps.*, 662 F. Supp. 2d at 150 (noting that "all of the arguments regarding the Secretary's alleged 'about-face' have been flatly rejected by every court that has considered them").[10] Accordingly, the court concludes that the Administrator's imposition of a bona fide sale requirement on consolidating providers as a

---

[9] In support of its argument that the bona fide sale requirement was not imposed on consolidating providers at the time of the consolidation at issue here, the plaintiff cites two letters from former CMS officials and a provision of the Medicare Intermediary Manual ("MIM"). *See generally* A.R.P. at 909-10 ("Booth Letter"); A.R.P. at 1217-18 ("Goeller Letter"); A.R.P. at 1095 ("MIM § 4502.7"). Yet both letters specifically invoke § 413.134(f) in stating that a consolidation may, under the proper circumstances, trigger a depreciation adjustment payment. *See* Booth Letter (stating that a consolidation "require[es] a determination of gain or loss under § 413.134(f)"); Goeller Letter (stating that when providers consolidate, "an adjustment to recognize any gain or loss . . . would be required in accordance with regulations section 42 CFR 413.134(f)"). Similarly, although the MIM section cited by the plaintiff instructs intermediaries to compute a gain or loss upon consolidation, it expressly refers to the consolidating providers as "seller[s]." *See* MIM § 4502.7.

[10] The plaintiff argues that all of these decisions are flawed because they failed to explicitly address the MIM section that the plaintiff cites. *See* Pl.'s Reply at 19. Yet, as the MIM section refers to the consolidating hospitals as "seller[s]," MIM § 4502.7, the court perceives no inconsistency between the MIM section and the administrative determinations upheld in these decisions.

condition of permitting the payment of depreciation adjustments was not a regulatory reversal[11] and constituted a reasonable interpretation of the Medicare regulations.

### 2. The Administrator's Conclusion that No Bona Fide Sale Took Place Was Supported By Substantial Evidence

The plaintiff argues that even if the bona fide sale requirement applied to consolidating providers, that requirement was satisfied here because the consolidation amounted to a bona fide sale. Pl.'s Mot. at 35. Specifically, the plaintiff argues that the Administrator erred in ruling that a bona fide sale required the payment of reasonable consideration. *Id.* Instead, the plaintiff contends that at the time the consolidation occurred, a sale was considered bona fide as long as the transacting parties exchanged *any* consideration. *Id.* at 35-39. In support of this contention, the plaintiff points to cases in which the Administrator found certain sales to be bona fide despite disparities between the consideration paid and the assets' fair market value. *See id.* at 37. Alternatively, the plaintiff argues that to the extent that reasonable consideration was required, it was paid in this case. *See id.* at 40. In response, the defendant argues that the reasonableness of the consideration has always been part of the determination of whether or not a bona fide sale has taken place, and contends that the cases cited by the plaintiff involved arm's length negotiations over price that are inapposite in this case. *See* Def.'s Mot. at 18. Furthermore, the defendant asserts that substantial evidence supports the Administrator's conclusion that the consolidation was not a bona fide sale. *See id.* at 20.

At the time the consolidation occurred, the Medicare regulations did not provide a

---

[11] Because the court concludes that there was no regulatory reversal regarding the bona fide sale requirement, it need not reach the plaintiff's various arguments that the alleged reversal was invalid because it violated procedural and statutory requirements. *See* Pl.'s Mot. at 45-53.

definition of "bona fide sale."[12]  *See generally* 42 C.F.R. §§ 400.200-203, 413.134.  These regulations did, however, reflect an understanding that a bona fide sale would involve a price that approximated market value.  *See id.* § 413.134(b)(2) (defining "fair market value" as the value that would be received in a bona fide sale).  Furthermore, the rationale underlying the bona fide sale requirement – "ensur[ing] that any depreciation adjustment will represent economic reality, rather than mere 'paper losses,'" *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1275 – demands that the requirement be "more than a mere nullity," *id.* at 1276.  For these reasons, courts have consistently upheld determinations that a bona fide sale requires reasonable consideration.  *See Albert Einstein Med. Ctr.*, 566 F.3d at 378; *Robert F. Kennedy Med. Ctr.*, 526 F.3d at 563; *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1276; *Provena Hosps.*, 662 F. Supp. 2d at 154; *St. Luke's Hosp.*, 662 F. Supp. 2d at 104.  Accordingly, the court concludes that the Administrator did not err when it considered the reasonableness of consideration in determining whether the consolidation at issue resulted in a bona fide sale.

The remaining issue before the court, then, is whether the Administrator's conclusion that the consolidation did not involve the payment of reasonable consideration was not supported by substantial evidence.  *See Md. Pharm., Inc.*, 133 F.3d at 16.  Through the consolidation, the plaintiff assumed responsibility for all of the liabilities of Harrisburg/Seidle and Polyclinic and gained title to all of their assets.  A.R.P. at 2156.  The plaintiff contends that the assumption of liabilities provided reasonable compensation to the consolidating hospitals for the assets that they transferred to the plaintiff.  *See* Pl.'s Mot. at 41.  Yet the record indicates that prior to the consolidation, Harrisburg/Seidle had a combined fair market value of $176,364,817,

---

12  In 2000, a definition of bona fide sale was added to the Provider Reimbursement Manual.  *See* A.R.H. at 13.  The definition provides that a "*bona fide* sale contemplates an arm's length transaction between a willing and well informed buyer and seller . . . for reasonable consideration."  *Id.*

13

$101,420,796 of which was comprised of current assets and investments. *See* A.R.P. at 2168-69. In exchange for gaining title to those assets, the record shows that the plaintiff assumed only $98,923,542 in liabilities, less than the value of the current assets and investments alone.[13] *See id.* Similarly, prior to the consolidation, Polyclinic had a fair market value of $115,116,356, $62,128,000 of which was comprised of current assets and investments, and which the plaintiff gained title to in exchange for assuming only $54,262,561 in liabilities. *See* A.R.P. at 2170. Although the plaintiff argues that it also assumed additional unknown and contingent liabilities, the mere possibility of such liabilities does not invalidate the Administrator's conclusion under the deferential "substantial evidence" standard of review. *See Albert Einstein Med. Ctr.*, 566 F.3d at 379 n.11 (rejecting the possibility that unknown and contingent liabilities "could account for such a large discrepancy between consideration given and the market value of the assets"); *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1277 n.16 (rejecting the argument that contingent liabilities explained the discrepancy between assumed liabilities and the value of assets). Furthermore, unlike the administrative decisions that the plaintiff cites in which sales were determined to be bona fide despite a discrepancy between sale price and market value,[14] it is

---

[13]    The plaintiff argues that the stated values of the facilities acquired through the consolidation are misleading because they represent the reproduction cost for outdated facilities rather than the cost to obtain more suitable modern facilities, which the plaintiff asserts would be lower. *See* Pl.'s Mot. at 43-44. At most, however, this distinction could affect only the valuation of the plaintiff's facilities and still could not explain the substantial discrepancy between the consolidating hospitals' liabilities and the value of their monetary assets. Furthermore, the burden is on the plaintiff to prove that a bona fide sale took place, *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1277, and the plaintiff has not provided any evidence of the fair market value of the facilities determined according to its preferred methodology, *see generally* Pl.'s Mot.

[14]    *See, e.g.*, *Ashland Reg'l Med. Ctr. v. Blue Cross & Blue Shield Ass'n*, PRRB Dec. No. 98-D32, Medicare & Medicaid Guide (CCH) ¶ 46,109 (1998), A.R.P. at 1317-26; *Lac Qui Parle Hosp., Inc. v. Blue Cross & Blue Shield Assn.*, PRRB Dec. No. 95-D37, Medicare & Medicaid Guide (CCH) ¶ 43,269 (1995), A.R.P. at 1331-39.

undisputed that the consolidation did not involve any negotiations over price.[15]  *See* Pl.'s Mot. at 34.  Because the record contains substantial evidence supporting the conclusion that the consolidation at issue in this case was not a bona fide sale, the court affirms the Administrator's determination.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of June, 2010.

RICARDO M. URBINA
United States District Judge

---

[15] The plaintiff argues that it would be impossible for consolidating entities to negotiate over price because all of their assets would transfer to the consolidated entity upon consolidation.  *See* Pl.'s Mot. at 34.  Even if true, however, this fact would merely underscore the particular importance of the reasonable consideration requirement in consolidations as opposed to sales, during which procedural safeguards such as arm's length price negotiations are possible.